The court now calls 114852 People of the State of Illinois v. Annabel Melongo. Are the parties ready to proceed? Yes. You may proceed. Madam Chief Justice, Honorable Justices of the Supreme Court, Counsel, may it please the Court, I am Assistant State's Attorney Alan Spellberg, representing the people of the State of Illinois. The issue before the Court today is whether or not the Illinois eavesdropping statute can be properly applied to a case involving surreptitious telephone recording. The facts of the case are simple and are essentially undisputed. In December 2009, Defendant Annabel Melongo, charged with a case of computer tampering, got into a dispute with the court reporters as to whether or not they were accurately reporting what occurred in court. As the dispute became heated, she became engaged in telephone conversations with Pam Taylor, the head court reporter for the official court reporters at 26th Street, and called her on three different instances and recorded those conversations. In none of those conversations did she inform Ms. Taylor that she was recording the conversation, did she ask her permission to do so, or did she notify her that she intended to post the audio and the transcript of the recordings on her website. Shortly thereafter, after the matter was posted on the website, Ms. Melongo was charged with eavesdropping under six counts. The matter proceeded to a trial at which her defense was that she did purposely engage in the recording, but for the sole purpose of, under the exemption in the eavesdropping statute, that you are permitted to record, through electronic means, a conversation without notice to the other party if you believe, if you reasonably believe, that that person is committing an offense against you or a member of your family. The jury was hung. The matter was transferred to a new judge, at which point the defendant filed a pro se motion to declare the statute unconstitutional, wherein she again asserted that the manner of recording was done pursuant to the exemption, permitting it in cases where you believe that you have a crime being committed against you. The trial judge heard the matter, took it under advisement, and in the interim the Seventh Circuit ruled in a case called ACLU v. Alvarez that the eavesdropping statute is unconstitutional as applied to the recording of open recording of police officers speaking in a loud, audible voice that can be heard by others without amplification when they're engaging in their public duties. The trial judge, relying upon the Alvarez case, as well as an earlier decision by another Circuit Court judge, found that the statute is unconstitutional on basis of substantive due process. Mr. Spelberg, does the fact that the conversation took place over the telephone in this case distinguish it from Alvarez? Yes, Your Honor, I believe it does. Alvarez is very clear that it is a limited ruling to open recordings. It is providing a right of recording public conversations in the open where the person with the recording device is seen and observed. It's not surreptitious in any way, and the Seventh Circuit makes it clear that they are not addressing in any way surreptitious recording. They recognize that there may be issues associated with surreptitious recording, but they aren't discussing it and aren't addressing it. And the reason why was because the Court said that in the situation of the police officer speaking loudly in public with another citizen or with another police officer, that those are not private conversations. There is no expectation of privacy in any way when you speak loud enough for other people to hear you. So you're saying that a telephone conversation is inherently private? Yes. Telephone conversations are private conversations by definition. Even if it is with a public official? Or is any conversation with a public official acting in her official capacity inherently public? Your Honor, that is clearly the defense argument that any conversation with a public official is a public conversation. But that can't be the case. That's a policy question for the legislature. The legislature has made a determination that telephone conversations are inherently private unless there's a consent given to them in some way. And what happened in this case is that Ms. Taylor was sitting in her office when the phone rang and she answered the phone, unwittingly being recorded by the defendant. She had no opportunity to consent. She had no reason to grant or refuse consent because she was never even informed of the possibility. The circumstances of the phone call didn't in any way indicate that there would be a necessity of consent. But how does the fact that the person being recorded factor into the statute? Does it implicate consent, privacy, or both? I believe what the legislature has done is they've determined that consent is the best mechanism available for ensuring conversational privacy. As the Seventh Circuit recognized in the ACLU case, conversational privacy is an important governmental interest. The U.S. Supreme Court has said the same. This Court has said the same. But the consent ---- Looking at the statute. Pardon? How does it factor into the statute? Well, what the legislature has done is that it presumes that conversations are private unless consent is given to by both parties or all parties to the conversation. Well, it doesn't actually say it. You were saying it presumes. The statute presumes it? Well, the definition of conversation states that regardless of whether or not the circumstances indicate that the parties believe it to be private, it is still considered a conversation which is subject to the eavesdropping statute and that therefore can only be recorded with the consent of all the parties. And that's the rub. Isn't it, Mr. Spelman? Nowhere does the statute require that the recorded conversation be private. Is that fair? Yes, that's correct, Your Honor. I'm concerned with the overbreadth of the statute, to be quite frank with you. Your explanation to the examples given by the defense here that, for example, street performer and a heckler, a shouting match at a baseball game, obviously someone taking a video off their phone or whatever, would they be subject to this statute? No, Your Honor. I don't believe they would. And that goes to, say, our argument as to why Judge Sachs's order in the Christopher Drew case, which was relied upon by the trial judge here, so extensively why it's wrong. The statute requires that in order to commit the offense of eavesdropping, you have to knowingly and intentionally record a conversation without the consent of the other parties for the purpose of recording that conversation. So there are three mental state factors associated with it. Well, let's stop you there. All that is a given. Let's use the baseball game and the two people shouting. I'm going to record this and I'm going to put it on YouTube. Would that meet the requirements of the statute with respect to the eavesdropping? If the purpose of the recording is to specifically record that conversation, that argument before them, then, yes, it would seem to appear to fall under the eavesdropping statute. Well, that's one simple example, right? But you can think of hundreds of examples like that. In fact, they're occurring, aren't they? Couldn't we go to YouTube today and just find many? Yeah, there may be some. I would think that it's probably far more likely to find inadvertent recording, as Judge Sachs referred to, say, the recording of the conversation at the child's soccer game is where it comes up. And that would not be under the statute because of the purpose aspect of the eavesdropping statute. But in terms of... So are we relying, then, on prosecutorial discretion, then? Or do you think these, what I call over-broad examples, they wouldn't fall under this statute? Are you sticking with that position, or is it more a prosecutorial discretion? Yeah, I believe it's not simply prosecutorial discretion, although there is not a spate of eavesdropping charges coming up in situations like that. Because, again, nobody recognizes that those are considered to be private conversations. Nobody would seem to have to ask consent for someone who is out at a baseball game screaming at another person. And so consent is intended, I believe, under the statute, in particular in this case under a telephone surreptitious recording, in a situation where there is some sort of expectation of privacy. As the Seventh Circuit recognized, the eavesdropping statute seems to apply in cases where there would be no expectation of privacy of any sort, not one that even the legislature even intended. And so I'm not here saying that these... They could say that, though, right? Pardon, I'm sorry? Be easy enough to say that in the statute. Yes, I believe Your Honor could, yes. Mr. Spilberg, can we infer that the statute does not punish innocent conduct based on the statutory requirement that one of the parties to the conversation did not consent to the conversation? Can we infer that? If I understand your question, Your Honor, I believe it's asking, does the statute cover far too much potentially innocent conduct? Yes. And I would direct this Court to the Howland case and to the Madrigal case, which I relied on, and what this Court said in both of those cases, and in the cases before that, Wick and DeRambo, if the statute covers a significant amount of innocent conduct, which is not intended to... is not of the type of the harm that the legislature was intending to address, then it would seem to violate substance of due process. But if it is the harm, if the conduct, which is the harm that the legislature intended to address, is precisely the harm which is identified as seemingly innocent conduct, that becomes a policy question for the legislature to decide what is and what is not appropriate. And so that's why in the Howland's case in particular, the decision as to whether or not the child pornography statute was overly broad this Court recognized it didn't cover enough of a risk of innocent conduct being fallen into it. In this case, the legislature has decided within their authority that the eavesdropping statute covers all nonconsensual recording, and in particular in telephone cases. And because of that, all the potentially innocent conduct that may or may not be addressed is directly related to the harm that the legislature was trying to address. So unlike, say, the example in Madrigal, with the risk of the husband calling to the car dealership to find out if his wife's car was ready to be picked up, that was not the type of identity theft information that the legislature was trying to address. And so there was clearly innocent conduct, which was unexpected and unplanned for by the legislature, which was falling under the statute. That's not the same here, at least with regards to telephone interception. What are we to do with the definition of conversation in the statute that says regardless of whether one or more of the parties intended their communication to be of a private nature? Well, Your Honor, I think that that actually helps explain the distinction between, say, implied consent and constructive consent. And in the Seventh Circuit decision, the Court makes a fairly good description as to the distinction between those two. Under the eavesdropping statute, consent can be expressed or implied by the circumstances. So the Seja case, which we cite, involved a pinging during the conversation. And so this Court recognized that anybody hearing the pinging would know that the conversation is being recorded. But constructive consent is instead looking at the overall circumstance and say, oh, that person must have known, must have consented. And that's where the legislature, in defining conversation, after the Beardsley and Harrington cases, went. They made sure that we're not going to allow for constructive consent, but they are going to permit the still consent, the implied or expressed consent. And that's precisely what this legislature did, what our legislature did. After this Court's decision in Beardsley, after its decision in Harrington, and in particular after seeing Justice Belandick's dissent in Harrington, where he said that every telephone should be given a warning label to be put on there that warning, any time you answer this phone, you may be recorded, the legislature sought to ensure the conversational privacy. They did it by requiring consent of all the parties. That's exactly what happened in this case in regards to the telephone conversations that the defendant recorded, because what she did was she called another person who had no reason to know that she was being recorded and made her own decision as to whether or not it was a public or private conversation. Rather than allowing all the parties to make the determination to protect their own privacy interests, the defendant here did it herself. And that's the problem with the defense argument, that's the problem with the trial judge's ruling, is that it negates the privacy rights of the other members of the conversation. They have rights. The legislature has the authority to define those privacy rights and protect those privacy rights, even for government employees. That's why I said it's a policy question for the legislature. It's not a constitutional question for adjudication by this Court. Help me with this question. I think you argue that because there's a knowing and an intentional use of the eavesdropping device, there's a scienter involved. But that's not, that doesn't necessarily require criminal knowledge and intent. What is specifically the unlawfulness? Well, I believe it's the next sentence where it says, for the purpose of recording, and it's a recording without consent. And it's the recording of a private conversation. A recording of a conversation, yes, without consent. And in this case, I believe that the defendant has effectively pled herself out of court by specifically arguing that the reason why she engaged in this recording was not because she believed that she had the authority under the First Amendment or due process, but instead because she was doing it to protect herself. She knew that it was an unlawful recording, but was relying on the statutory exemption to protect herself against a crime being committed against her. So I respectfully request that this Court consider the particular factual allegations that occurred in this case, because that was the defendant's defense at their trial. That has been the defendant's basis for the motion in this case. That is what happened in this case. So then let me ask you this. Is this an as-applied or facial attack? Your Honor, it's not really clear. I'll be honest. Because the trial judge ruled that it was both facially and as-applied. The trial judge's ruling was based on the Alvarez case, was based on Judge Sachs' order in Christopher Drew. The Alvarez case specifically says that it is an as-applied ruling. Judge Sachs, I believe, did say it was facially, but from a standpoint of the mental state, from substantive due process. In terms of whether or not there is an inherent right to record, I don't believe that. I think that's an as-applied challenge, but I'm not certain. I can't answer that. And I don't believe that the trial judge here did a full analysis on that point. And that's actually, I believe, one of the most important problems with this case, is that the trial judge here essentially assumed that this was the same case as the Seventh Circuit decision. But it is not. And defense argument in their brief essentially is asking this Court to relitigate the Seventh Circuit case. But it's not. This case is a very different scenario. This is a person sitting in an office picking up her telephone. Yes, she's a government employee, but she is not in any way engaging in a public conversation. She still has the freedom to decide what she's going to say in that conversation and how she's going to say it. And she's never given that opportunity in this case. Robert, what are the differences in this case in the identity theft statute that we struck down in Madrigal? Well, Your Honor, admittedly, the statute in Madrigal also had the knowing and intent and purpose language. I recognize that. But what Madrigal didn't have was a clear understanding as to what the precise conduct it was trying to address. There is no conduct which this eavesdropping statute is attempting to address other than the recording of nonconsensual conversations. It doesn't. It only addresses that. In Madrigal, this Court talked about situations when it wasn't simply trying to misuse someone's identity. There was no criminal aspect at all. But typical, ordinary, everyday interactions that people have in their families, with their friends, at work, that was the problem. As I understood it from Madrigal is that it went far too broad. It didn't address specifically the point it was trying to address. In the language of Madrigal, it addressed a significant amount of otherwise innocent conduct that was unintended by the legislature. And I don't believe that's the case here. Could this be a statute that technology has made it more likely unconstitutional in the whole overbreadth situation, same as maybe identity theft? Certainly, Your Honor. The eavesdropping statute could be a statute which is in need of update in light of technology. But again, I would suggest that that's a policy question. Whether or not it's constitutional is whether or not it's within the legislature's authority, is it a reasonable legislative goal, one that's within their police power, and do they have engaged in a reasonable means of achieving that goal. Certainly recognizing conversational privacy is a reasonable legislative goal. Every court has recognized that. And because ensuring the consent of all parties is the best way of establishing the subjective understanding of the parties, it's the best way, the most direct way of ensuring that that goal is reached. So that's why I think it is distinct from Madrigal because Madrigal was not, it didn't have that connection between the legislative goal and the outcome of what they were doing. And so if there are no further questions, we would respectfully request that this   We will be going and remand the matter back for further proceedings. Thank you. Thank you. Plotkin? May it please the Court. My name is Gabe Plotkin. I represent Annabelle Milongo. The State argues that the eavesdropping statute is written to protect private conversations. But the statute's language says otherwise. On its face, the eavesdropping statute says privacy is irrelevant. A person cannot record a conversation regardless of whether the party has intended it to be private. Put another way, a person is a criminal eavesdropper, even if she records without consent a conversation that all of the participants intended to share with the world around them. The Seventh Circuit in Alvarez said it best. By legislating this broadly, by making it a crime to audio record any conversation, even those that are not private, the State has severed the link between the eavesdropping statute's means and its end. How does your argument that you just made with regard to facial unconstitutionality square with the fact that the defendant in this case relied on the exception? The fact that Ms. Milongo relied as a defense at trial on the exception doesn't plead her out of court or change the analysis here. The facts of this case, as an initial matter, don't matter under the overbreath doctrine. They also don't matter under the due process challenge that we bring. But we know in the overbreath contract, we know that for Stevens, for example, the defendant in Stevens was convicted at trial. But even though he fell within the language, the elements of the statute, the Supreme Court of the United States still struck that down under overbreath grounds. What Ms. Milongo has admitted to, what the facts have shown here, is that she did record a conversation and that she did post them to her website. But as the questions here have shown, there's nothing about her defense at trial or any evidence or any stipulation she's made that show that she acted with the intent to invade anybody's privacy. That's the problem. That's what's missing here, is that the statute doesn't require as a purpose that the defendant or an individual, a citizen, invades somebody's privacy. That's the purpose that's missing. And Ms. Milongo has never said she acted with the purpose of invading somebody's privacy. So even if we are concerned with the particular facts of this case, there's nothing that happened below that somehow ties her hands and says she is not entitled to relief because of what happened in this case. I think it's important to say that under either the First Amendment or under due process, the specific facts of this case don't change the result. Case law makes clear that Ms. Milongo can challenge the eavesdropping statute regardless of her particular conduct. And it also makes clear that this Court can strike down the law without considering her particular conduct. So this is a facial challenge. We have brought both a facial challenge and an as-applied challenge because I also believe, and we've argued here and I want to talk about the fact that these telephone conversations were not private conversations. And therefore, even if this Court would like to say we're not striking down the entire statute, we're only going to strike it down as applied to non-private or public conversations, Ms. Milongo is still entitled to relief. And here's why. Even if we go as applied, the State has talked a lot in their brief, and they want to try and make this about only telephone conversations. There's not a constitutional right to surreptitiously record a telephone conversation. First of all, the statute isn't just limited to telephone conversation. It applies even to someone recording hecklers on the street or the ILL, INI call and response at a football game. But with respect to telephone calls, we all have this instinct, right, that a telephone call is private. We think about calling a spouse, calling a loved one. I get that sense. That's an intuitive feel we have. But that intuitive feel doesn't answer the constitutional question, and that's because public officials acting in their official capacities don't have the same rights of privacy. And we talk about this. We cite the Husky case and the Cassidy case. Those are Illinois cases or federal cases based on Illinois law. And what those cases tell us is that a person performing official duties has no right of privacy as to information concerning his or her discharge of those duties. Ms. Taylor is a public official. She called Ms. Milango. She initiated these phone conversations. She is a member. Ms. Milango is a member of the public. But Ms. Taylor is a public official who is acting in her official capacity as the assistant director of the criminal division, and she was calling to explain official policies of her office on a matter of public concern. This is how the court reporter's office works. This is what happened in a public criminal case. That makes this conversation a non-private conversation. In Cassidy, which is an Illinois case that we cite, the court held a public official performing a laudable public service and discharging a public duty has no right of privacy against intrusion with reference to the gathering and dissemination of news concerning his discharge of those duties. That's the case law on which we are relying to say that Ms. Taylor in that conversation, these three particular conversations, talking to a member of public in her official capacities about a matter of public concern, these are not private phone calls. And as a result, even if this court would like to say we're going to look at this as an as-applied challenge and say the Illinois eavesdropping statute is unconstitutional as applied to non-private conversations, Ms. Milango also is entitled to relief and the case against her should be dismissed. Now, I will say that I don't believe that is the correct way to go in this case. I think this should be struck down on its face because this court is entitled to interpret the statute in a way that limits its reach, but it's not entitled to rewrite the statute. And the problem that the legislature has created, which is different than the statutes in all other cases, is not just to say, you know, take privacy out. They have written in their definition of conversation, this applies regardless of whether the parties or any party intended the conversation to be private. I submit it's difficult to read that language as applying only to public or non-private conversations. It's a big problem with the breadth of this statute. I'd like to just also make sure we haven't talked at all about the publishing provision. I just want to make clear that the publishing provision, everything said about the recording provision, is equally true about the publishing provision. The idea that the recordings can't be used or the information used or divulged is not limited to private conversations. So any holding with respect to the recording provision also dooms the publishing provision. There's been some discussion as well about consent. And the State has said a few times that, well, consent is the best way to do this. And it's a permissible method. That's not the test. It's important to point that out. This is a First Amendment challenge and a due process challenge. These are constitutional challenges. And while the legislature has some free reign to define privacy how it wants to, it cannot overstep constitutional bounds. So the question is whether by using consent instead of privacy is the statute narrowly drawn to serve a substantial government interest without unnecessarily interfering with First Amendment freedoms. That's the test, not what is best. And there's a few reasons why consent is a horrible substitute for a definition of privacy. For one thing, it gives government officials and public actors unilateral and unfettered right to deny the press or citizens the right to record, gather information and disseminate information about the government. Putting all the hands on the consent allows a police officer to withhold his consent and say, you can't watch what we're doing. Pay no attention to what your government is doing. In that sense, consent is a horrible fit with the First Amendment protection or First Amendment conduct that's implicated by the eavesdropping statute. Consent is also not easy. The government, the state has suggested that consent makes this a lot easier. We don't have to find out what's private and what's not. But first of all, the statute doesn't define consent. Second of all, the statute doesn't include implied consent. Now, this court read into the statute in the CIHA case implied consent. But implied consent is a difficult standard. It has to look at the facts and circumstances of every case and determine in that particular situation was implied consent given. And then that begs the question of, well, what are you consenting to implicitly? Just the recording of the conversation or the use and divulging of the information that's on there? Or the giving of that recording to someone to post onto YouTube? What is your implied consent allowing? Saying consent is enough isn't an easy fix. And I'd also point out that consent is not always easy to get. We have a bunch of hypothetical situations we've presented in our brief. The State has not said, and I think admitted this morning, that, yes, those examples that we put in there would fall under the statute and be criminal. The high school student in the back of a PTO meeting doing a report for his civics class or something for the school newspaper who wants to record a debate about banning books in the school. If you're in the back row of a crowded auditorium, you may not be able to get consent. The fact that you're in the back row and can't get consent shouldn't define whether or not you have engaged in criminal conduct when the conversation that you are recording is plainly public. If this Court doesn't want to get into the First Amendment analysis, the Court can also strike down the statute under due process, because the severed link between the eavesdropping statute's means and its end, the disconnect is so great that it also fails even the rational basis, the reasonable standard that's used there, where substantive due process as a statute has to go down if it doesn't represent a reasonable method of preventing the targeted conduct. This is not a reasonable method. It is not reasonable to say we are trying to protect private conversations and then say, but we don't care if the conversations are private. We don't care if they're public. That's a problem here. It's like the Carpenter case. The Carpenter case said we don't like secret compartments in cars when they're used to hide contraband, dangerous or illegal goods. So instead of saying we're going to write, instead of writing a statute that says it's a crime to put illegal or contraband in a secret compartment in your car, they say, well, let's just ban all secret compartments, even if someone uses it to hide their jewelry from thieves. This is the same idea. The Court, the State, the General Assembly has said we want to protect private conversations, well, so let's just make consent for all conversations. The legislature is free to define privacy in a way that matters, in a way that is important to the public. It's important and makes sense for the legislature. But it doesn't, it's not allowed under the First Amendment or under due process to eliminate entirely the concept of privacy. It has to give some definition to, it has to include privacy and give some limit to the statute. There's one other point I'd like to make and then if there are no questions, I'll conclude. And this is that the Court is about to hear a People v. Clark, which is also a challenge to the eavesdropping statute under different facts. And the State has said here that, you know, Ms. Taylor, this isn't a public conversation. It doesn't matter that she works for the Court Reporter's Office. I've explained why that's wrong under Illinois law, under the Cassidy case, the Husky case, and the Bartnicki case, by the way, which is a U.S. Supreme Court case, which has similar language about public officers and officials losing certain privacy rights when they're engaged in their public duties. But I think it's important to note that in the State's reply brief on page one, in the first paragraph, in the Clark case, they try to distinguish what happens in Clark from what happens in Alvarez. And they say, public officials, when performing their public duties, have no legitimate privacy interests that would outweigh the strong First Amendment interest at stake. The State of Illinois has taken that position in the People v. Clark case. That is dispositive of this case right here. Ms. Malongo spent more than 20 months in prison for recording just such a conversation, a conversation with a public official performing her public duties. That is unconstitutional. And it's time that we allow time for her case to be dismissed for good, and for others to be spared the fate that she's gone through. If this statute is about protecting conversational privacy, it must be limited to private conversations. For while the legislator is free to define privacy in a way that best serves the people of the State of Illinois, the First Amendment and the due process clauses do not permit the legislature to eliminate entirely the concept of privacy from the eavesdropping statute, and make felons out of people who record plainly public speakers engaged in public conversations. On behalf of Ms. Malongo, I ask that you find the eavesdropping statute unconstitutional, either on its face or as applied to non-private conversations. And I ask that you dismiss the case against her. Very briefly, first just to clarify the facts just somewhat, in the record on page 182 of the common law record is the defendant's pro se motion to declare the statute unconstitutional. And on page 182 is where she specifically says that the recording was done based upon her reasonable suspicion that a crime was being committed against her, essentially invoking the exemption contained under the eavesdropping statute, clearly showing that this was done purposely and with knowledge that it was otherwise improper to do. But more directly to the legal arguments, again, I'll say again, counsel is asking this Court to essentially rubber stamp the Alvarez decision. However, he must not have read it carefully, because the Alvarez decision specifically says that the Illinois legislature is not restricted to the freedom to decide the best manner of ensuring conversational privacy. In this case, in this statute, the Illinois legislature determined that consent is the best manner. Can I ask you, and I'm very sincere, can you help me understand these words? The definition of conversation, the term conversation means any oral communication between two or more persons. And then we have this phrase that was added later. Regardless of whether one or more of the parties intended their communication to be of a private nature under circumstances justifying that expectation. It's that language that I think your opponent is pointing to, saying the legislature here is saying it doesn't matter if this is private or public. Is that what that says? I don't believe so, no, Your Honor. Then what does it mean? I believe that that language was specifically adapted by the legislature in response to the Beardsley and Harrington cases. And what the court what the legislature was trying to do was to eliminate what the Beardsley court held was single-party consent. That one party to a conversation could make the determination entirely on his own whether or not this would be a public or private conversation, whether or not it could be recorded, whether or not it could be shared with others. Weren't those cases about, they talked a lot about eavesdropping, where the term means. Right. Somebody standing under the eaves listening to what's going on in a room above them, versus a conversation where a declarant is saying something and the other person is recording those words. Is it no longer private if it's a conversation between the defendant and the declarant? Is that what those cases were? I believe so. The Beardsley case involved a person-to-person communication where one person had a reporter hidden. The Harrington case involved a telephone conversation, much like this one, where one person had a hidden recorder and recorded the conversation. And in both cases, this Court held that the statute, because it required, referred solely to a private expectation and that one party could have an expectation that it wasn't private, that would be enough to allow it to fall outside the scope of the eavesdropping statute. And I recognize the word eavesdropping is a connotation that is probably not appropriate in this instance, but that's another question for the legislature. That's how the Beardsley, I found that very interesting. The Beardsley case talked about that idea of where eavesdropping comes from. It also talked about Watergate. There's a lot of Watergate discussion in that, too. So what does this mean? What does this, regardless of whether one or more of the parties intended their communications to be private? Again, the argument is that the legislature has taken out of the statute the whole idea of privacy, even when you say that that's the basis of the purpose. Well, as I said, the legislative intent is to protect conversational privacy. I believe that after Beardsley and Harrington, the legislature determined the best way to do that, the best way to ensure that all parties to a conversation have their privacy protected, is to demand that all parties to the conversation give consent to the recording of the conversation. That's what I believe that language means. Because of the context of the single-party consent that was recognized in Beardsley and Harrington and the legislative purpose to change that, they determined that consent was the best manner of ensuring that each person's privacy rights are respected instead of just one person to the conversation. Mr. Spelberg, to follow up on Justice Tice, what language, what specific words in this statutory definition translate into what you say? Your Honor, I will be honest. I don't believe that there is an express definition of legislative intent in the eavesdropping statute. But the history of the eavesdropping statute, in particular the amendments based specifically upon Harrington and Beardsley,   definition as to what the goal of the eavesdropping statute is, and just the common understanding of the respect that's given to private conversations in allowing the individuals participating in the conversation to define the scope of that conversation. But I will honestly admit that there is no specific reference in the legislature, in the legislation, identifying a specific purpose of conversational privacy cases, that there is no expectation of privacy on behalf of public officials and public employees. I would point out that those cases involve the tort of invasion of privacy, as opposed to a legislative determination that certain conversations are entitled to respect, to engaging in conversational privacy. And so as we said in our brief, as I said earlier, this is a legislative question. The legislature has the authority, has the power to decide that all conversations, even those involving government officials, have some respect for privacy in order to ensure the free and open exchange of ideas. And that's what happened here. Pam Taylor did not know that she was being recorded. She did not have the freedom to decide what she was going to say and what she wouldn't. Yes, she was engaging in her job as a public official, but she still had a role to decide personally what she was going to say, how she was going to say, when she was going to say it. And that's what the legislature here intended to protect, that person's role in deciding what would have to happen. Finally, in terms of the publishing provision, I would just say, as we cite in our brief, the publishing provision is identical essentially to the ones which have been recorded in the Bartnicki case. But I will candidly admit that if this Court finds that the recording provision is unconstitutional, then the publishing provision one would fall also. And the reason why is because in the Bartnicki case, the Court said that you cannot charge someone with unlawful distribution of otherwise improperly recorded information if they were not the ones who did it unlawfully. If they did it unlawfully, you can charge them. But if they didn't do it unlawfully themselves, you can't charge them. So if this Court were to find that the recording was not unlawful, then obviously the publication would also have to be deemed not unlawful. And for those reasons, I would respectfully request that this Court reverse the lower court's decision and remand the matter back for further proceedings. Thank you. Case number 114852, People of the State of Illinois v. Annabelle Milongo. It is taken under advisement as agenda number two. Mr. Spellberg, Mr. Plotkin, thank you for your arguments today. You are excused.